## SUPREME COURT.

### Hornby agt. Cramer and others.

A *notice of sale* on a foreclosure of a mortgage, by advertisement, which states that the sale will take place at the *City Hall*, (New-York,) is sufficient, without stating the *particular place.* All the buildings used for holding courts within the Park, are by law deemed parts of the City Hall; so that the notice would be too indefinite, were it not that, by *common usage,* there is one established place for such sales, and that is the *rotunda* in the City Hall proper.

The statute (1844, *amending* 2 *R. S* 545, § 8) makes the sale a *bar* only to such parties " who shall have been served with notice of said sale as required by law;" and those parties are, the mortgagor, or his personal representatives, and the subsequent grantees and mortgagees, whose conveyance and mortgage are on record at the time of the first publication of the notice, and all persons having a lien under a subsequent judgment or decree.

The notice is to be *served* personally, or by leaving it at their dwelling, in charge of a person of suitable age, or by serving a copy, at least twenty-eight days prior to the time therein specified for the sale, by depositing the same in the post-office, properly folded and directed to the persons at their places of residence.

Therefore, where service is made by mail, the twenty-eight days are to be counted from the time of the *deposit* of the letter, and not from the *post-mark,* or the forwarding of the letter. And a notice *deposited* on the 4th of April for the 3d of May, held sufficient, although it was post-marked the 5th of April.

Where the affidavit shows that the notice of sale was once *affixed,* it is sufficient, without also showing that the individual who affixed it, afterwards saw

it there. If the notice is once affixed, it is presumed that it remained so until the contrary appears. And *semble*, that a subsequent removal by a stranger would not affect the title.

The affidavit may be made by the person who affixed the notice, or by any other person *who saw the notice during the time required.* This last is intended to be an equivalent to the first; so that one who saw the notice posted twelve weeks prior to the time of sale, has seen it during the time required.

It cannot mean that such other person should see it posted every minute, hour, or day, or even week, of the twelve weeks; but it is safer and more prudent to see the posting weekly.

Where a subsequent incumbrancer claims an assignment of a mortgage, on foreclosure, he must *tender* the amount of principal and interest, and costs, to the mortgagee; merely saying what he will do, and thereupon paying the amount into court, by depositing in a trust company, does not stay the proceedings of the mortgagee, nor stop the interest due to him.

*New-York Special Term, June,* 1855.

WEEKS & DE FOREST, *for plaintiff.*
MANN & RODMAN, *for defendants.*

MITCHELL, Justice. Cramer commenced a foreclosure by advertisement, giving notice, on Dec. 30, 1854, that the sale would be on the 29th of March, 1855, at 10 A. M., at the City Hall, in the city of New-York. At the day appointed, the attorneys for Hornby and Cramer met at the rotunda in the City Hall, and objection was made that Hornby, who was a subsequent mortgagee, had not been served with any notice of the sale; and that the notice did not state in what part of the City Hall the sale would take place. All the buildings used for holding courts within the Park are, by law, deemed parts of the City Hall: so that the notice would be too indefinite were it not that, by common usage, there is one established place for such sales, and that is the rotunda in the City Hall proper. It is like a notice of sale at the Merchants' Exchange—that would be sufficient notice, but the sale should be in the rotunda. That objection was bad. The other objection was good.

The Revised Statutes, as amended in 1844, (*Chap.* 346,) required notice of the sale to be given to the mortgagor, or his

*personal* representatives, and to the subsequent grantees and mortgagees, whose conveyance and mortgage are on record, at the time of their first publication of the notice, and upon all persons having a lien under a subsequent judgment or decree, by serving it personally, or leaving it at their dwelling, in charge of a person of suitable age, or by serving a copy, " at least twenty-eight days prior to the *time* therein specified for the sale; by *depositing* the same in the post-office, properly folded and directed to the persons at their places of residence."

The act of 1844 so amends the Revised Statutes (2 *R. S.* 545, § 8,) as to make the sale a bar only to such parties " who shall have been served with notice of said sale, as required by law." (*Laws of* 1844, *Ch.* 346, § 4.)

These objections being made, Cramer postponed the sale to the 3d of May, 1855, and published new notices on the 30th of March, 1855, and caused notice of the sale to be *deposited* in the post-office for Hornby on the 4th of April 1855. Hornby objects that this notice was too short; that it should be for twenty-eight days, and he says it was for twenty-seven only, as it was post-marked the 5th of April—and he contends the post-mark must control. The post-mark shows the day when the letter was *forwarded* by mail, not the day when the letter was deposited in the post-office. The act requires the notice to be by *depositing* the letter in the post-office twenty-eight days prior to the *time* specified for the sale. The twenty-eight days are to be counted from the time of the *deposit* of the letter, not of the forwarding of the letter.

There used to be sometimes an old distinction between a notice to be served, or thing to be done, a certain number of days before a *thing was* to be done, and before the *day* on which the thing was to be done; and the latter was held to exclude, in computation, the day of the service, and *also* the *day* on which the thing was to be done; while, in the former case, one day was included and the other excluded, in the computation. Such subtle distinctions, probably, no longer prevail; and the Code, if it can apply to these proceedings, always excludes the first day and includes the last, in the *computation.* (§§ 407, 425.)

Hornby agt. Cramer and others.

In this case, if the old subtlety prevails, one day is still to be included in the computation—(that is, to be counted as one of the twenty-eight:) for the act is, that the notice is to be twenty-eight days prior to the *time* specified—not prior to the *day* of the sale. Then, if the post-mark prevailed; excluding the 5th of April from the number of days, and including the day of sale, the 3d of May—there were twenty-five days in April and three in May, which was enough.

It is objected, that the affidavit of posting only shows that the person putting up the notice, put it there, without showing that he afterwards saw it there. The statute allows the affidavit of *affixing* the notice to be made by the person who *affixed* the same, or by any other person who saw such notice so posted *during* the time required. (2 *R. S.* 547, § 10, *amended* 1844, *Ch.* 346.)

If the notice is once affixed, it is presumed that it remained so until the contrary appears; and it may be that a subsequent removal by a stranger would not affect the title. There is no proof that it was removed:—all that the statute requires is an *affixing* of the notice twelve weeks prior to the time specified for the sale, (*Laws of* 1844, *Ch.* 277, § 5,) and an affidavit of the affixing of the notice. (*Laws of* 1844, *Ch.* 346.) In the case of publication in the newspaper, it says, by publishing for twelve weeks *successively*, at least *once* a week; showing expressly that it is to be renewed every week. In the case of *affixing*, no language is used indicating a necessity of a renewal. Once affixing seems to satisfy the words of the statute. The affidavit may be made by the person who affixed the same, or by any other person who saw the notice posted *during* the time required. This last is intended to be an equivalent to the first; so that one who saw the notice posted twelve weeks prior to the time of sale, has seen it during the time required. It cannot mean that such other person should see it posted every minute, hour, or day, or even week, of the twelve weeks, while the person affixing the notice need only to swear to the affixing. Undoubtedly, it is safer and more prudent to see the posting weekly: and the fee-bill allows a fee of $1 for the expense

of posting the advertisement and *inspecting the same.* As $1 has been allowed in taxation for a copy notice for posting, (*Collins* agt. *Standish, &c.,* 6 *Pr. R.* 495,) it would add considerably to the expense, if the party were to take each week a new copy to put up, if the first were lost. At all events, as in this case there is no proof that the notice was taken down, and no question of title actually arises, it must be deemed sufficient.

On the first proceeding, Hinmon and Scott, owners respectively of parts of the premises, and the judgment-creditors of Scott, were not notified. In this, also, that proceeding was irregular; and Hornby could not safely buy at the sale, as their rights would not be cut off. For these irregularities, Cramer cannot charge any of the costs of the sale first attempted, viz., to 28th March, inclusive.

Hornby claimed the right to redeem, and have an assignment of Cramer's mortgage, on payment of principal and interest only. Cramer offered to assign his mortgage, but insisted on principal, interest, and the costs of the first proceeding. Cramer then adjourned the sale to a day so remote as to enable him to comply with the law, as to the *omitted* parties, if the first notice were a nullity; and the parties still differing about the costs, Hornby filed his bill, and on paying into court the principal and interest, and about $100 to cover costs, obtained an injunction to prevent Cramer's proceedings in the sale. The parties each insist on their strict rights; and if each suffers, it is the result of his indisposition to make any concession.

Cramer, for the reasons before stated, can recover no costs of the first proceeding. But his second proceeding was regular, and Hornby made no legal tender, which made it the duty of Cramer to suspend his advertisement until the money was paid into court. He merely *said* what he would do: he produced no money, and made no tender of any—and, for aught that appears had not the money ready. Cramer, until the *money* was produced and offered to him, was not bound to assume that it would be forthcoming.

The plaintiff, therefore, must pay the costs in the second

proceeding to sell, to be taxed, as in *Collins* agt. *Standish*, (6 *Pr. R.* 493, &c.,) and the defendant Cramer's costs in this action, including $10 costs of this motion, and the principal due to Hornby, with interest at seven per cent.; and Cramer, at the same time, must assign the bond and mortgage held by him to Hornby, in proper form and with proper covenants, to be settled by one of the judges of this court, and consent to an order that the money on deposit be repaid to the plaintiff, with any increase thereon.

The plaintiff deposited the money in the Trust Company, and contends that he should not pay interest to Cramer for that time. To stop the interest, he should have tendered the money directly to Cramer. Cramer was entitled to have his money in his own hands, and not to have it locked up to abide the event of this suit.

Let an order or judgment be entered accordingly.