BUSH v. WHITE et al., *Appellants*.

85 339
99 302

85 339
·57a 389

85 339
156 689

85 339
157 352

1. **Sheriff's Deed, Amendment of.** Where a sheriff's deed is defective, as in failing to state the date and amount of judgment, he has the right to make another deed and can do so after the expiration of his term of office.

2. ———— : TITLE CONFERRED BY RELATION. A sheriff's deed relates back to the date of the judgment lien and operates to transfer the title of the judgment debtor as of that date and the same is true of his amended deed.

3. **Execution.** A judgment creditor is entitled to an execution as a matter of course for the purpose of enforcing his judgment.

4. ———— : STATUTE. The act of the legislature of March 23, 1863 (Acts, p. 19) relating to executions, does not assume to restrict such judgment creditor in his right to such execution. That act relates only to the extension and revival of liens of unsatisfied executions and provides for a method of enforcing them by renewed execution without the necessity of a re-levy upon the property originally covered by them.

5. **Sheriff's Deed** : RECITAL AS TO PLACE OF SALE. A recital in a sheriff's deed that he made the sale at the court house, will be construed as meaning, especially after the lapse of a long time, that it was conducted at the lawful and customary place of making sales.

6. **Mortgageor**, ACQUISITION BY OF OUTSTANDING TITLE. Under the law as it now prevails in this state, a mortgageor occupies no such

subservient relation to the mortgagee as to prevent him from acquiring an outstanding title against the mortgagee.

7. **Limitation**: KNOWLEDGE OF MORTGAGEOR'S ADVERSE POSSESSION. Nor is actual knowledge on the part of the mortgagee of an adverse holding of possession by the mortgageor necessary to start the running of the bar of the statute of limitations in favor of the former.

8. **Mortgage Lien**: WHEN STATUTE OF LIMITATIONS BEGINS TO RUN AGAINST. The statute of limitations begins to run against the lien of the mortgagee as soon as the right of action thereon accrues.

9. **Mortgageor's Absence from State**: STATUTE OF LIMITATIONS. The absence of a mortgageor from the state, occurring after foreclosure or the transfer of his interest in the mortgaged property, will not interrupt the running of the statute of limitations.

*Appeal from Saline Circuit Court.*—HON. JOHN P. STROTHER, Judge.

REVERSED.

*Draffen & Williams* for appellants.

(1) The court erred in excluding the sheriff's amended deed dated May 3, 1867, from B. H. Hawpe, sheriff, to Wm. H. Trigg, and the deed from Trigg to defendant, Wade. The first sheriff's deed being defective, it was the duty of the sheriff to make an amended one. *Thornton v. McKimmon*, 48 Mo. 219. The omission of the word "door" in the amended deed was simply a clerical error and was immaterial. *Strain v. Murphy*, 49 Mo. 337; *Buchanan v. Tracy*, 45 Mo. 437; *Davis v. Kline*, 76 Mo. 310; *Allon v. Sales*, 56 Mo. 28; *Wilhite v. Wilhite*, 53 Mo. 71; *Ellis v. Jones*, 51 Mo. 180; *Harnby v. Cramer*, 12 How. Pr. 490; *Warner v. Sharpe*, 53 Mo. 598; *Davis v. Peveler*, 65 Mo. 189. Besides, the deed was amendatory of the one made in 1865, and the latter showed the sale was made at the court house door and the defendant offered to show by parol evidence that it was in fact so made. *Moore v. Wingate*, 53 Mo. 398; *Gardner v. Tucker*, 61 Mo. 428; *Jones v.*

*Carter*, 56 Mo. 403. The recitals in the deed in regard to the executions were sufficient. The statute does not require the execution to be set out in full or in substance in the deed. The names of the parties to the execution, the date when issued, the date of the judgment, etc., are given, and this is all that is required. 1 R. S., 1879, sec. 2392; *Stewart v. Severance*, 43 Mo. 322; *Groner v. Smith*, 49 Mo. 318; *Perkins v. Quigley*, 62 Mo. 498. (2) When the amended deed was made it related back to the day of the sale and the deed of Trigg and Stephens, whether one of warranty or quit-claim, carried the interest Trigg had acquired by his purchase under the sheriff's sale. *Mariner v. Porter.* 50 Mo. 364; *In re Quenzler*, 70 Mo. 39. (3) If the possession of Wade was not originally taken in subordination to the mortgage, but was hostile to it in its inception, then it was unnecessary for defendant to show that actual knowledge thereof had been brought home to Bryant. The rule in regard to the change from a friendly to an adverse holding would not apply. *Key v. Jennings*, 66 Mo. 356; *Miller v. Bledsoe*, 61 Mo. 96; *North v. Hammonds*, 34 Wis. 425; *Stevens v. Brooks*, 24 Wis. 326. (4) Even if the sheriff's deeds were defective, they were competent to show color of title. *Mansfield v. Pollock*, 74 Mo. 185. (5) The court erred in declaring that Bush was a *bona fide* purchaser and could not be bound by any estoppel existing against his grantor. Actual payment is necessary to a purchaser for a valuable consideration. *Paul v. Fulton*, 25 Mo. 156; *Bishop v. Scudder*, 46 Mo. 472; *Foster v. Holbert*, 55 Mo. 22. (6) The plea of the statute of limitations was a good defence. After the lapse of ten years a mortgagee can neither in equity nor at law enforce his demand against the realty covered by his mortgage. *Adair v. Adair*, 78 Mo. 630; *Rogers v. Brown*, 61 Mo. 187; *Cape Girardeau Co. v. Harbison*, 58 Mo. 90; *Hunter v. Hunter*, 50 Mo. 445.

*Yerby & Vance* also for appellants.

(1) The court erred in excluding Sheriff Hawpe's deed to Trigg as evidence of title, because in the recitals "door" was left out after the word court house in describing place of sale, although appellant proved *aliunde* that said sale did take place at the court house door. *Buchanan v. Tracy*, 45 Mo. 437; *Wilkerson v. Allen*, 67 Mo. 502; *Durette v. Briggs*, 47 Mo. 356. (2) The court erred in not declaring the respondent barred under the statute of limitations, as the appellant held under Wm. H. Trigg, and Trigg under sheriff's sale made in 1865, under execution on judgment rendered in 1860, prior to Bryant's deed of trust, and if sheriff's deed was void, it was color of title and Trigg and his grantors, having taken possession under sheriff's deed, held adversely to Bryant, and having held openly, notoriously, uninterruptedly, and peaceably, claiming title for more than ten years, gave appellant title and the court should have so declared. Session Acts, 1863, page twenty-four, extending lien of judgment, authority of legislature to pass said act. *Ellis v. Jones*. 51 Mo. 181. Act retrospective and cuts out subsequent adverse interests. *Riggs v. Goodrich*, 74 Mo. 108; and authorities therein cited; *Warner v. Veitch*, 2 Mo. App. 459. That Wade's possession was an adverse one, see Hermann on Executions (1 Ed.) 511; Tucker's Commentaries (3 Ed.) top page 171, side page 176; same, top page 403, side page 413 and 414; *Rogers v. Brown*, 61 Mo. 195; *Bobb v. Woodward*, 50 Mo. 95; *Ridgeway v. Holliday*, 59 Mo. 444; *Brady v. West*, 60 Mo. 33; *Key v. Jennings*, 66 Mo. 367; *The Lessee of Ewing v. Burnette*, 11 Peters 52; *The Lessee of Mercer et ux. v. Selden*, 1 Howard 51, showing acts which establish adverse possession similar to this case. *Hunter et al. v. Hunter et al.*, 50 Mo. 451, in which the court says, ten years' bar applies to all actions for the recovery of land or for the enforcement of *trusts* growing out of lands. (3) The

court erred in not declaring Bryant's deed of trust from Reeves, dated in 1861, barred by the statute of limitations of ten years, there having been no credits and no recognition of said trust and no interest paid, and no possession of said premises by the trustee or *cestui que trust* within ten years, and that a sale under it was void, and that Bush, the respondent, acquired nothing by his purchase.    4 Kent's Com. (6 Ed.) 189 ; 2 Story's Eq. Jur. (9 Ed.) pp. 215–216, secs. 1028 *a* and 1028 *b* ; also, same vol. p. 733, sec. 1520 ; 2 Perry on Trusts (2 Ed.) p. 488, sec. 858 ; *Hughes v. Edwards*, 9 Wheaton (U. S.) 497–498 ; *Elmendorf v. Taylor*, 10 Wheaton (U. S.) 168 ; *Moreau v. Detchemendy*, 18 Mo. 529 ; *McNair v. Lott*, 25 Mo. 190 ; *McNair v. Lott*, 34 Mo. 285 ; *Hunter v. Hunter*, 50 Mo. 451.    The court will observe that though twenty years is in all these cases spoken of as fixing the bar, yet it is expressly said that the period which fixes the bar is that period which the statute fixes to bar an ejectment, which our statute fixes at ten years. (4) The court erred in deducting the time of the absence from the state of Reeves, the grantor in the deed of trust to Bryant, thereby making the time less than ten years, and preventing the bar of the statute, notwithstanding the deed of trust had run for upwards of eighteen years before the sale without recognition, and the appellant had been in peaceable possession for upwards of sixteen years, the exception in statute applying only to personal actions.    Revised Statutes, sec. 3236 ; 5 Cent. Law Jour. 253 ; 2 Hilliard on Mort. (3 Ed.) p. 30, sec. 30.

*L. W. Scott* also for appellants.

(1)    The court erred in permitting plaintiff to introduce evidence to show the absence of the mortgageor from the state, for the purpose of bringing the mortgagee's debt within the statute of limitations, since the debt was due before he left the state, and the land might have

been resorted to afterwards. 2 Hilliard on Mortgages (3 Ed.) sec. 30; *Eubanks v. Leveridge*, 5 Cent. L. J. 253; *Dunn v. Buckley*, 56 Wis. 190; *Teal v. Walker*, 12 Cent. L. J. 439. (2) The court erred in admitting in evidence the deed from Bryant, mortgagee, to Bush, the plaintiff, for the reason that the mortgage upon which it was founded was, at the time of the pretended sale, a stale demand and one which a court of equity would not have sustained and enforced in a foreclosure suit. *Smith v. Clay*, 3 Brown's Ch. R. 639; *Castner v. Walrod*, 83 Ill. 171. (3) The court erred in holding that the omission in sheriff's deed, to Trigg, of the word "door" invalidated the deed and that it could not be supplied by parol evidence. Abbott's Trial Evid. 702; *Wood v. Moorehouse*, 45 N. Y. 368; *Jackson v. Schaffer*, 11 Johns. 513; *McGoon v. Scales*, 9 Wall. 23; *Strain v. Murphy*, 49 Mo. 337; *Wilkerson v. Allen*, 76 Mo. 592. (4) The court committed error in holding the act of March 23, 1863, unconstitutional and void as to Bryant's mortgage. *Wood v. Messerby*, 46 Mo. 255; *Stewart v. Severance*, 43 Mo. 322; *Porter v. Mariner*, 50 Mo. 364. The legislature had the power to enact the law extending the lien from three to five years. *Ellis v. Jones*, 51 Mo. 180. (5) The court erred in its declarations of law and its finding to the effect that it was necessary for the defendant, Wade, to show in evidence, not only that he "held and claimed to hold the land adversely to the mortgage title at least ten years before the institution of this suit, but that he must also show that notice of this adverse holding and claim was brought home to the mortgagee, Bryant, for that length of time before the suit." 2 Hilliard on Mortgages, sec. 4; *Cape Girardeau Co. v. Harbison*, 58 Mo. 90; *Anderson v. Baxter*, 4 Or. 107; *Christopher v. Sparks*, 2 Jac. & W. 233.

*Wallace & Chiles* for respondent.

(1) There was no error in the court below in admitting in evidence the deeds made by Bryant, mortgagee,

to plaintiff. Acts 1881, 171. (2) The sheriff's deed offered in evidence by plaintiff was rightly admitted. It was offered to show the title and *only title* of Trigg and Stephens in the land at the time they made their deed of June 6, 1866, being the equity of redemption of Reeves, and this is the claim of title and *only claim of title* under which defendant, Wade, entered into and possessed said land. Even if Trigg acquired any other title or interest by a subsequent sheriff's deed, which is denied, still it would not pass to Wade by such former deed of date June 6, 1866, which is but a *quit-claim deed* and does not pass an after acquired title. *Bogy v. Shoab,* 13 Mo. 365; *Valle v. Clemens,* 18 Mo. 486. *Gibson v. Chouteau,* 39 Mo. 536; *Butcher v. Rogers,* 60 Mo. 138; Herman on Estoppel, 306; Tyler on Ejectment, 530–540; *Mayor v. Buckley,* 51 Mo. 227. A title to land purchased at a sheriff's sale can only pass by the purchaser's obtaining a deed. *Leach v. Konig,* 55 Mo. 451; *White v. Davis,* 50 Mo. 33. (3) There was no error committed by the court below in excluding the alleged sheriff's deed made by B. H. Hawpe to Trigg, of date May 12, 1865, offered by defendant to. show color of title. The deed failed to recite the date or amount of the payment and was void as a sheriff's deed, and as Trigg had never been in possession, it could show no color of title in Wade. *Frigate v. Pierce,* 49 Mo. 441; *Williams v. McLanahan,* 67 Mo. 499; *Tanner v. Stine,* 18 Mo. 580; *Pillow v. Roberts,* 13 How. (U. S.) 472; 1 R. S., 1855, p. 748, sec. 56; Tyler on Ejectment (Ed. 1870) 870. (4) The amended sheriff's deed offered by defendant, was properly excluded. It was fatally defective in not reciting that the sale was not made at the court house door. 1 W. S., p. 609, sec. 42 and p. 612, sec. 55; *Ruby v. Huntsman,* 32 Mo. 501; *Reid v. Martin,* 9 Mo. 878; *Kane v. McCown,* 55 Mo. 181; *Strain v. Murphy,* 49 Mo. 337; *Allen v. Moss,* 27 Mo. 354. The only remedy Trigg had, if any, was to procure a new sheriff's deed under the supervision of the court issuing the execution. *Ware*

*v. Johnson*, 55 Mo. 500; G. S., ch. 160, sec. 1. Such deed could be good only against parties and privies, and purchasers with notice. *Ware v. Johnson*, 66 Mo. 662. The amended sheriff's deed was also defective, because the sheriff re-levied the renewed execution on the same property levied on by virtue of the returned execution, and purports to sell by virtue of *all the levies and executions*, and, hence, sells property embraced in the subsequent at the same time with that included in the original levy in violation of the statute (Acts 1863, p. ——), under which the renewed execution was issued. It was beyond the power of the legislature to revive the lien of either a judgment or execution which has already expired. *Turner v. Keller*, 38 Mo. 332; *Riggs v. Goodrich*, 74 Mo. 108; *Wood v. Augusten*, 61 Mo. 46; *Maupin v. Emmons*, 47 Mo. 304; *Ex parte Bethurum*, 66 Mo. 545; *Neilson v. Chariton Co.*, 60 Mo. 386; *Abernathy v. Dennis*, 49 Mo. 468; *McCartney v. Alderson*, 54 Mo. 320. (5) Limitation does not run where the maker of a note departs from and resides out of this state after the cause of action accrues. G. S., ch. 191, sec. 16; W. S., p. 919, sec. 16; *Whittlesey v. Roberts*, 51 Mo. 120; *Cook v. Holmes*, 29 Mo. 61; *Miller v. Tyler*, 61 Mo. 40; *Johns v. Smith*, 43 Mo. 499. (6) There was no estoppel against plaintiff; Bryant's mortgage was on record when Wade purchased. *Bales v. Perry*, 51 Mo. 449; *Block v. Dorman*, 27 Mo. 31; *Appleton v. Kennon*, 19 Mo. 637; *Valle v. Amer., etc.*, 27 Mo. 455; *Allen v. Ransin*, 44 Mo. 263; *Riddick v. Grupman*, 49 Mo. 389. Statements and declarations of Bryant, if any, prior to the sale to plaintiff, are inadmissible in evidence to impair plaintiff's title. *Kean v. Newell*, 2 Mo. 9; *Beaujour v. Tutt*, 32 Mo. 576; *Howell v. Howell*, 37 Mo. 124. (7) In law both the mortgageor and those claiming under him when in possession of the land mortgaged, are in privity with and subservient to the mortgage and mortgagee; "and nothing short of an *open*, explicit disavowal and disclaimer of holding under that title, and

. - assertion of title in himself brought home to the owner
will satisfy the law," so as to make an adevrse holding
or possession. *Budd v. Collins*, 69 Mo. 129, 137, and 139
to 141, and cases cited ; *Quinn v. Quinn*, 27 Wis. 170 ;
*Goodwin v. Goodwin*, 69 Mo. 617 ; *Butler v. Lawson*,
72 Mo. 227 *Fulkerson v. Brownlee*, 69 Mo. 371 ;
*McDowell v. Schneider*, 27 Mo. 412 ; *Carter v. Feland*,
17 Mo. 383 ; *Cape Girardeau Co. v. Harbison*, 58 Mo. 90 ;
Tyler on Eject. (Ed. 1870) 876, 878 ; *Ibid*, 530–546–7, 918,
919, and 920 ; *McCandless v. Moore*, 50 Mo. 511 ; *Cook v.
Travis*, 20 N. Y. 400. To be *adverse*, possession must
be hostile in its inception. Tyler on Eject. (1870) 874,
876, and 877. The evidence in this case does not bring
Wade's possession within the requirements of law to
constitute an *adverse* possession against Bryant's mort-
gage.

MARTIN, C.—On the fourteenth day of May, 1881,
the plaintiff sued the defendant, James White, in eject-
ment to recover one hundred and sixty acres of land oc-
cupied by him, and situated about ten miles from the
city of Marshall, in Saline county. The defendant, Wil-
liam H. Wade, appeared, and on his own motion was
made co-defendant with White, on account of holding
to him the relation of landlord. In his separate amended
answer, the defendant, Wade, denies the title of plain-
tiff, and pleads the statute of limitations. He also
pleads facts tending to establish an estoppel against the
claim of plaintiff, to the general effect that he had pur-
chased the land and greatly improved it, relying upon
the acts and assurances of the party under whom plain-
tiff derives title, that he possessed no such claim against
the land as the plaintiff pretends to have acquired from
him. The matters of the answer are formally denied in
the replication. It appears from the evidence that the
land in controversy was entered by one John D. Reeves,
who received a patent therefor bearing date July 25, 1860.

He is accepted by both sides as the common source of title.

The plaintiff claims through a mortgage deed made by said Reeves to one John W. Bryant, dated March 27, 1861, acknowledged and recorded May 4, 1861, which includes the premises in dispute, along with another tract contiguous thereto, as well as certain personal property, and which was given to secure a promissory note of said Reeves to Bryant in the sum of $1,304.35, dated March 27, 1860, and payable one day after date. This mortgage deed vested in said Bryant the power of sale upon default of payment of the note. By a sale conducted by said Bryant in pursuance of the terms of the power, the plaintiff on the twenty-third of April, 1880, became purchaser of the premises he sues for, as well as certain other real estate contained in the mortgage. In consideration for this other real estate which was known as the Gorman tract, the plaintiff informs us that he gave to Bryant his promissory note in the sum of $2,500, which, however, is not to be paid unless he succeeds in maintaining the title acquired by him. In consideration for the premises in controversy he gave his promissory note in the sum of nine hundred and eighty dollars, which, according to the testimony of both Bryant and himself, was taken and is to be treated as absolute payment for the land. This note is still in the hands of Bryant. Messrs. Bryant and Bush are both attorneys at law doing business in the same office in the city of Marshall, Saline county. The deed of mortgage and the mortgagee's amended deed to plaintiff, of May 10, 1881, were admitted in evidence, and being regular upon their face, they would seem to furnish him with a *prima facie* title to the land, notwithstanding the lapse of about nineteen years between the execution of the mortgage and the sale to plaintiff under it.

For the purpose of anticipating the defendants' evidence on the statute of limitations, the plaintiff introduced a sheriff's deed of the interest of said Reeves in

the land to one Wm. H. Trigg, through whom defendants in their answer claim to have derived title. This deed is dated May 12, 1864, and purports to have been made in compliance with an execution sale under a judgment rendered against said Reeves on the eleventh day of November, 1863, in favor of the Farmers' Bank of Missouri. The judgment was subsequent to the mortgage, and Trigg paid at the sale $2,100 for his purchase. The object of this evidence was to prove that Trigg, from whom defendants derive title, acquired only the equity of redemption, thus taking the place of Reeves, the mortgageor; and that neither Trigg nor defendants claiming under him could maintain that their possession of the premises was adverse to the rights of the mortgagee, subject to which they should be regarded as purchasing the land and making entry thereon. The plaintiff, also, introduced evidence tending to prove that Reeves, the debtor, was absent from the state a sufficient length of time to leave the defendants without the full bar of ten years' limitation against the plaintiff's claim.

In support of his title, the defendant, Wade, offered in evidence an amended sheriff's deed to said William H. Trigg, dated May 3, 1867, purporting to have been made in compliance with an execution sale of the premises made on the twelfth day of May, 1865, under a judgment in the circuit court of Saline county, in favor of said Trigg and against said Reeves and others, rendered November 8, 1860, thus antedating the mortgage deed under which plaintiff derives title. The deed recites a consideration of $505 in cash paid by said Trigg, the purchaser. Defendants next offered in evidence a deed from said William H. Trigg and Joseph L. Stephens (who is alleged to have acquired an interest with said Trigg at the said execution sale), to defendant, Wade, dated June 6, 1866, and recorded May 18, 1867. This deed purports to convey all the interest, right and title of said Trigg and Stephens to the grantee. Defendant,

Wade, as grantee therein, paid down seven hundred dollars in cash, and remained indebted for $1,300 more, for payment of which the deed reserves a vendor's lien. These two deeds, if valid, would seem to defeat the plaintiff's case by vesting in the defendant a superior title. They were both excluded by the court for reasons which I will consider in passing upon the action of the court.

In support of his title by limitation, defendant, Wade, offered in evidence, a defective sheriff's deed to Trigg, dated May 12, 1865, and recorded January 25, 1866, purporting to be based upon a sheriff's sale made on the twelfth day of May, 1865, under an execution dated February 15, 1865, issued upon a judgment in favor of Wm. H. Trigg, and against John D. Reeves and others. The date and amount of the judgment do not appear in the blank spaces left for them. The defendants offered to prove that the only judgment in favor of Wm. H. Trigg against said Reeves was rendered November 8, 1860, and is the same one referred to in the amended sheriff's deed. This deed was excluded on objection of plaintiff. The object of defendants in offering it was to show that Wade, who took possession of the premises before the amended deed was executed, made his entry thereon under color of a superior title, and not in subordination to the equity of redemption previously acquired by Trigg, in May, 1864, as indicated by the sheriff's deed to him of that date. The offer of this deed was followed with evidence on the part of defendants tending to prove that immediately after his purchase from Trigg and Stephens, of June 6, 1866, defendant, Wade, entered upon the premises in controversy, which, at that time, consisted of unbroken prairie lands, enclosed the same, reduced them to cultivation, and erected thereon a house and barn, and that he has ever since been in possession thereof by himself or tenants, claiming to be the absolute owner thereof and holding the same adversely to Bryant and his assigns. The evidence shows that during all this time no payment was made

upon the mortgage debt, and that no rents or profits were received to the use of the mortgagee.

It appears that Bryant, the mortgagee, made several efforts to collect his debt against Reeves and his wife by suit, but that he had never asserted it in any way as a claim or subsisting lien against the premises in controversy. Several witnesses, including the defendant, Wade, testify to conversations had with Bryant, in which he declared that he made no claim against the land in controversy by virtue of his mortgage. These conversations are denied by Bryant. He admits, however, in explanation of his failure to assert his mortgage, that has early as 1866, he examined the records bearing upon the title, and came to the conclusion that his mortgage right had been cut out by the sheriff's sale under the judgment of November 8, 1860; but that by a subsequent examination of all the authorities, English and American, he had satisfied himself that he was wrong in that conclusion.

The court gave seventeen instructions at the instance of plaintiff. They are too long and numerous to be included in any statement. About half of them relate to deeds, which the court excluded, and for that reason their pertinency is not apparent. The rulings contained in them are all involved in the action of the court excluding the deeds, and need not be considered in connection with anything else. In respect to the defence of the statute of limitations, the court in substance ruled that, if Wade, by virtue of the deeds admitted in evidence, acquired only the equity of redemption, then his possession, although continued for ten years, was not adverse to Bryant, the mortgagee, unless actual notice of an adverse holding was brought to the knowledge of Bryant ten years before the commencement of this suit. As owner of the equity of redemption, the court declared that Wade could not dispute the mortgage, nor set up an outstanding title. It declared as a matter of law, that the note described in the mortgage was **not**

barred by the statute of limitations and that the absence of Reeves from the state could not be included in the limitation of time within which the mortgage debt had to be asserted.    These annunciations of law are repeated in different forms which need not be rehearsed here.    It is unnecessary to review the instructions which the court refused to give at the instance of defendants.    They relate to a title and to a possession which the court would not permit to be proved.    The errors of which the defendants complain, if any, were suffered before the time for giving instructions had arrived.    The issues were found in favor of plaintiff, and judgment rendered accordingly, from which action of the court the defendants appeal.

I.    The most important question presented in the record for our determination relates to the amended sheriff's deed of May 3, 1867, which was excluded by the court.    An admission of it would have ended the plaintiff's case, for the reason that it proves an outstanding title superior to the one he sues upon.    In this deed the judgment of November 8, 1860, against Reeves and others, and in favor of William H. Trigg, is recited as the foundation of the sale.    The deed, also, recites in detail that an execution was issued on said judgment February 22, 1865 ; that it was levied upon the real estate in controversy, and that after notice posted according to law, all the interest, title and estate of said Reeves was, on the twelfth day of May, 1865, sold by the sheriff to said Trigg, as the highest and best bidder.    This levy and sale was conducted by sheriff Hawpe, but the amended deed was made by him after the expiration of his term of office.    The first deed made by him being defective, in failing to state the date and amount of the judgment, he had the right to make an amended deed. R. S., 750 ; G. S., p. 647, sec. 60 ; *Porter v. Mariner*, 50 Mo. 364.

The lien of this judgment would have expired, according to law, November 8, 1863 ; but before its expira-

Bush v. White.

tion the legislature, by act of March 17, 1863, extended the term of existing judgment liens to five years. Sess. Acts 1863, p. 24. The constitutionality of this act has been settled by this court. *Ellis v. Jones*, 51 Mo. 180. Thus it appears that the lien of the judgment of November 8, 1860, was in full force when the execution of February 22, 1865, was issued, as well as when the sale under it was effected, May 12, 1865. Such a sale would operate to transfer the title of Reeves as of the beginning of the judgment lien, and would vest the purchaser with a title superior to the one derived from the subsequent mortgage lien. The court, however, ruled that the sheriff's sale and deed did not operate as an enforcement of the judgment lien at all. This ruling is predicated upon certain recitals appearing in the amended deed and upon the act of March 23, 1863 (Acts 1863, p. 19), relating to the extension and revival of execution liens. In his deed, the sheriff recites two previous executions under the same judgment, one levied on the eighth of April, 1861, the other on the tenth of March, 1864, upon the land in controversy; the first returned unsatisfied on account of the sheriff's resignation of his office before return day, the second returned in like manner by order of plaintiff. After recital of these previous executions, the deed continues: "And by virtue of said levies and the statute in such case made and provided, I, as sheriff as aforesaid, did re-levy said last named execution (that of February 22, 1865), on the real estate hereinbefore named, and did seize upon all the right, title, interest, claim, estate, and property of the said John D. Reeves in and to the same," and "by virtue of all, each and all of said executions, levies, and the statute in such case made and provided * * * did expose to sale" the interest and estate of said Reeves.

It is argued by the learned counsel for plaintiff that this last execution of February 22, 1865, was a renewed execution under authority of the first section of the act

of March 23, 1863, which provides for the revival, extension and enforcement of the liens of all executions then remaining unsatisfied; and that the office of the execution in question, as well as the purpose of those controlling it, was to enforce only the lien of the unsatisfied executions previously issued. It is argued that the execution was intended for this purpose alone, and that it could not be used to enforce the lien of an unsatisfied judgment. It is next argued, that while the sole office of the execution was to enforce the extended or revived liens of previous unsatisfied executions, the liens of the executions recited in the deed had expired, and that it was not within the power of the legislature to revive them; and that, consequently, nothing passed at the sheriff's sale of May 12, 1865. Without maintaining that the legislature could lawfully revive the lien of an expired execution, I fail to recognize any controlling weight in this argument. The execution under which the sheriff made sale could not be found, although there was evidence, outside of the deed, of its issue. The precise language of it is, therefore, wanting. I infer from the recitals that it was a third *fieri facias* in the usual form, properly enough referring to the two previous executions. As such, I think it was clearly within the purview of the statutes, which award to every judgment creditor an execution as a matter of course, for the purpose of enforcing his judgment. 1 R. S., 1855, pp. 735, 736, secs. 1 and 2. The lien of his judgment had, before its expiration, been extended by the act of March 17, 1863. I see nothing in the law, as it then stood, forbidding him to have an execution to enforce the lien of his judgment. Neither do I find anything in the act passed six days afterwards assuming to curtail or take from him this right. That act relates only to the extension and revival of the liens of unsatisfied executions, and provides for a method of enforcing them by a renewed execution without the necessity of a relevy upon the property originally covered by them. It

makes no allusion to judgment liens, and does not assume ·to change the usual method of enforcing them by a *fieri facias.*

In this case there was a distinct levy of a third execution, an official act which was necessary to enforce the judgment lien, which remained unsatisfied after the issue and return of two unsatisfied executions. The sheriff, by reciting his new levy, must have considered himself as enforcing the judgment lien. He assumes to sell and convey to the purchaser all the rights, title and estate of the debtor which could be seized and sold by virtue of this levy. I do not think it reasonable that the meaning and effect of his act should be vitiated, because he indulged in some superfluous recitals about previous unsatisfied and expired executions; the levies of which it was probably beyond the power of the legislature to revive as against the rights of third persons. It may be remarked here that the act of March 23, 1863, contemplates the issue of only one renewed execution to carry out the levy of an execution then remaining unsatisfied. While the second execution recited in the deed might with some show of plausibility answer the description of such renewed execution, the third one under which the sale took place would not seem to fall within the purview, of the act. Its connection with the previous levies would, therefore, be governed by the general law, which I am satisfied would give to it a force of its own, derived from the independent levy under it. I may add here that this deed could not be successfully impeached by proof that any of the prior executions on the judgment of November 8, 1860, had been levied on personal property, so long as it appears that the levies were fruitless and the judgment remained unsatisfied. *Porter v. Mariner,* 50 Mo. 364.

II. Another objection to this amended deed is that it recites that the land was sold at the court house, while the statute requires that it should be exposed for sale at

the court house door. 1 R. S., 1855, sec. 45, p. 746. The defective deed recites that it was sold at the court house door, and the defendants offered to prove that it was sold at that place. I have considered the arguments on this point, and I am satisfied that after fifteen years or more of possession under it by the purchaser or his assigns, the supposed defect is not material enough to defeat the deed. I think the sale should be sustained if the requisite act of the officer can be inferred from a reasonable construction of the language used by him. In reciting that he made the sale at the court house, he would, ordinarily, be understood as conveying the information that his sale there was conducted at the lawful and customary place for execution sales. ·I think the authorities strongly tend to support this construction of the recital. *German Bank v. Stumpf*, 73 Mo. 311; *Hornby v. Cramer*, 12 How. Pr. 490; *Mers v. Bell*, 45 Mo. 334; *Long v. Joplin M. & S. Co.*, 68 Mo. 422.

III. It is further objected that, although the amended deed may be effective as a conveyance, the defendant, Wade, by reason of the supposed subservient relation he holds to the mortgage and the purchaser under it, is estopped from setting it up as an outstanding title. In respect to this objection, I may venture to remark that the exclusion of the deed from Trigg and Stephens to Wade relieved him from any supposed subordinate relation to the plaintiff, or those under whom he derives title, and left him as an adverse occupant, relying upon his actual possession for a title. Thus situated, there is no law forbidding him from setting up an outstanding title or buying it in for his own protection. But treating the last mentioned deed as in evidence, as the plaintiff contends it was, I am persuaded that it establishes no relation which would deprive the defendant of the benefit of his plea, as will appear upon further consideration of the point. It is true that the admission of the deed would furnish Wade with the only title which **his** grantor was allowed by the rulings· of the court to

possess, namely: The title acquired at an execution
sale under a judgment subsequent to the mortgage. It
is insisted that by virtue of this title, he took the place
of Reeves, the mortgageor, and that as owner of what
was anciently known as the equity of redemption, he is
disabled from disputing the title of the mortgagee. This
position must have been approved by the court under a
misapprehension of the law at present prevailing on this
subject. Under the ancient common law, the mortgagee
was regarded as the legal owner of the estate, and as en-
titled to its possession. The mortgageor was possessed
of only an equity of redemption. The possession of
the mortgageor was treated as the possession in law of
the mortgagee, to whom he held the relation of a quasi-
tenant. By virtue of this relation alone he was disabled,
like any other tenant, from setting up or acquiring any
title hostile to the mortgagee. But in the courts of
equity the rights and relations of the two parties gradu-
ally underwent a change. The mortgageor, and not the
mortgagee, was regarded as seized of the legal estate. It
passed by descent to his heirs and was transmissible by
deed or devise. The mortgagee was denied any legal
estate. It did not descend to his heirs nor was it subject
to sale under execution. He was regarded only as the
owner of a lien on the land of the mortgageor, and his
remedy for its enforcement was by foreclosure and sale.
In this transformation, the subservient relation of the
mortgageor as tenant would seem to disappear; and
with it would, necessarily, disappear the rule forbidding
him to plead an outstanding title. No foundation for
the estoppel exists unless there is an express or implied
obligation to restore the possession at some time or in
some event, to the person or his privies who invoke it.
Tyler on Ejectment, 123; *Hill v. Hill*, 4 Barb. 419. No
such obligation exists between the mortgageor and mort-
gagee of the present day, at least in this state. Espe-
cially is this true of a mortgage like the one asserted in
this case, which gives to the mortgagee only a lien on

the land, coupled with the naked power of enforcing it by a public sale. These changes, which originated in the courts of equity, have at last come to prevail in the courts of law. Chancellor Kent, in commenting on the changes effected in that court, remarks: "The case of mortgages is one of the most splendid instances in the history of our jurisprudence of the triumph of equitable principles over technical rules, and of the homage which those principles have received by their adoption in the courts of law." 4 Kent's Com. 158.

My conclusion is that no relation of subserviency on the part of defendant, Wade, to the mortgagee or to the plaintiff, was established by the deeds referred to, which would estop him from setting up the outstanding or after-acquired title excluded by the court. I would not be understood as holding that a mortgageor might not in his mortgage be subject to such covenants, express or implied, as could embarrass him in pleading an outstanding or after-acquired title. But the embarrassment, if any, would spring from the covenants, and not from any supposed relation of subserviency, and might occur to any vendor using the same covenants. 2 Jones on Mortgages (3 Ed.) sec. 1483. It is, perhaps, unnecessary to add that impediments of this character are not in the way of the defendant, Wade, to whom the plaintiff concedes the mortgageor's title by a deed without covenants, from the purchase thereof at execution sale. According to this conclusion, the court erred in excluding the sheriff's amended deed.

I think it, also, erred in ruling that the deed of Trigg and Stephens, to Wade, did not operate to convey the title acquired by Trigg, as evidenced by the amended sheriff's deed. It is true, the amended deed was made after execution of the Trigg and Stephens deed to Wade, but Trigg had acquired the title at the execution sale, before his conveyance, and the amended deed of the sheriff conveyed it as of the date of the sale. The sheriff could not convey it as of any other date. The

deed is evidence that he had the title at the time of his deed to Wade. *Mariner v. Porter*, 50 Mo. 364; *In re Guenzler*, 70 Mo. 39.

IV. We now come to the defence of the statute of limitations. The court ruled that the statute did not commence to run against the mortgagee, until actual knowledge by him of an adverse holding on the part of the mortgageor or his assigns. This ruling was erroneous for the same reasons which invalidate the ruling in respect to the defence of an outstanding or an after acquired title. While the mortgageor was regarded as the tenant *sub modo* of the mortgagee, the rule which disabled him from availing himself of the statute of limitations, before some open act of hostility which severed the subservient relation, rested on a solid foundation. But when the courts come to deny the legal title or the right of possession to the mortgagee, there would seem to remain no material foundation for the rule. After recognizing in the mortgagee only a lien on the land, without any legal estate or right of possession, it was found that the statute which related only to the legal estates and demands, did not include the claim of a mortgagee. The courts, however, came to adopt in respect to his rights the limitation prescribed in actions of ejectment. But the rule, like most rules resting only on analogy, was never enforced with the precision and strictness prevailing in actions of ejectment. The courts were not able to escape entirely from the ancient idea of some sort of serviency attaching to the mortgageor's possession. Accordingly it will be found, as shown in the cases cited by the learned counsel of plaintiff, that the limitation of the statute by analogy has been denied in many decisions of this and other states, before some open act of the mortgageor, denying the existence or validity of the mortgage, has been brought home to the mortgagee. But these rulings are without support in the more recent decisions of this court, in which our statute of limitations is regarded as applying to liens and claims against real

estate as well as to the legal title thereof. *Rogers v. Brown*, 61 Mo. 187; *Hunter v. Hunter*, 50 Mo. 445; *Adair v. Adair*, 78 Mo. 630; 2 Jones on Mortgages (2 Ed.) sec. 1210; *Johnson v. Johnson*, 81 Mo. 331.

Our statute begins to run against the lien of a mortgagee as soon as his right of action accrues thereon. The running of the statute is not arrested until the mortgageor has committed some act of hostility ignoring the supposed subserviency of his possession, and denying the existence or validity of the mortgage lien. By an express provision of our statute it is arrested as to the debt by part payment or an acknowledgment of it in writing. These acts are sufficient to keep the mortgage lien alive as incident to the debt, if they happen while the mortgageor owns the land. I will not pretend to say that a mortgageor may not by competent contract or writing made for that purpose, continue the mortgage lien as a claim against his land, after the mortgage debt is barred by the statute. But it is unnecessary here to pursue this inquiry, for the evidence in this record fails to disclose any such act of the mortgageor or those possessing his title. There was no part payment by defendants or those under whom they derive title of the mortgage debt, and likewise no acknowledgment of it in writing; much less any distinct recognition of the mortgage lien, which would operate as an extension of it irrespective of the debt it was given to secure. To prevent misunderstanding, I will add here, that when the mortgagee is in possession I do not doubt the doctrine of his relation as a trustee to the premises he holds to secure the mortgage debt. But, under the law of this state, which gives the possession and rents and profits to the mortgageor before foreclosure of the security, I fail to find any element of trust, which would arrest the running of the statute against the mortgage claim. The mortgagee has his remedies in equity to prevent a destruction of the mortgaged estate, which might depreciate his security. But all rights of this character fall

short of converting the mortgageor into a tenant or technical trustee to his use.

It is urged that the absence of Reeves, the mortgageor, from the state should be deducted from the period of limitation claimed by defendants. When the mortgageor as debtor and owner of the land departs from the state, I recognize, without sanctioning, the cogency of the argument by which his absence is to be deducted from the period limited for enforcing the mortgage. This deduction has been approved under statutes similar to our own in respect to the exception of absence, and, without approving, I have no inclination here to controvert the conclusion. It will be seen that this exception has been recognized, notwithstanding the right left to the creditor to enforce his debt against the mortgaged premises by the extraordinary process of publication and by the process of a sale out of court under the power of sale contained in the mortgage. *Emory v. Keighan,* 94 Ill. 543 ; *Whalley v. Eldridge,* 24 Minn. 358. But if the mortgageor's absence happens after he has parted with his estate or been divested of it, the reason for deducting his absence, so far as any proceeding against the land is concerned, is wanting. He has ceased to be a necessary party to such proceeding, as it rests in the ordinary process of suits. His assignee as owner of the land is answerable to the ordinary process of law for the purpose of enforcing the mortgage, and the debtor is not a necessary party. This view has been approved in the recent case of *Zoll v. Carnahan,* 83 Mo. 35. As the absence of the debtor, Reeves, necessary to deprive the defendants of the full benefit of the statute, happened after he had been sold out, the running of the statute cannot be regarded as interrupted. In accordance with these views, the instruction that the defendants were entitled to a judgment on their defence of the statute of limitations ought to have been given. If the deeds offered by defendants to sustain their title had been

admitted they would have been entitled to a judgment on that issue.

Proceeding to render a judgment in the case to which the defendant was entitled under the evidence and pleadings, it is ordered that the judgment of the circuit court be reversed, and judgment be entered in favor of defendants. All concur, except Henry, C. J., absent.