Peck v. Lockridge.

---

## PECK *et al.* v. LOCKRIDGE, *Appellant.*

1.  **Lands of Wife, Seisin of Husband at Common Law:** LIMITATION. Prior to the enactment of the statutes limiting the common-law rights of the husband in the lands of the wife, her seisin and possession of such lands, with the right of action for their possession, were transferred by the marriage to the husband ; and if her lands were being held adversely, openly, exclusively and notoriously, under color of title, at the time of the marriage, his right of action existed then and the statute of limitations would begin to run from that date.

2.  **Joint Tenancy :** ADVERSE POSSESSION. Where a joint tenant buys the interest of his co-tenants at a judicial sale, and receives the commissioner's deed therefor, thereby obtaining or attempting and claiming to obtain their title, the doctrine that when one joint tenant purchases an outstanding title to the joint estate, it will be presumed and held to be for the benefit of all the joint tenants, does not apply.

3.  —— : ——. Where a joint tenant holds adversely to his co-tenants, it is not necessary that the hostile character of his possession should be brought home to them by a personal or formal communication to that effect, but it is sufficient if his claim of title to the whole estate be so notorious that their knowledge of it can be presumed.

*Appeal from Jackson Circuit Court*—HON. T. A. GILL, Judge.

REVERSED AND REMANDED.

*H. N. Ess* and *Dobson, Douglass & Trimble* for appellant.

(1) The commissioner's deed to Thomas J. Lockridge, the deed from said Lockridge to Nelson and from Nelson back to Lockridge, all purporting and undertaking to convey the entire interest in the land in controversy, and the deeds from said Lockridge to Parish and to Bartlett, conveying parts of the one hundred and sixty acres, together with the other acts of ownership, such as paying all taxes, making improvements, etc., by said Lockridge in his lifetime, and by his widow and administrator after his death, were quite sufficient to constitute an ouster of a tenant in common and make the possession adverse to the plaintiff, Alice R. Peck, from the date of the death of the grandmother, Rachael Lockridge, in 1862. *Campbell v. Gas Co.*, 84 Mo. 352 ; *Warfield v. Lindell*, 30 Mo. 272 ; Wood on Limitations, (Ed. 1882) 560 ; *Miller v. Miller*, 60 Pa. St. 16 ; *Biglow v. Jones*, 10 Pick, 161 ; 1 Wash. R. P. 566, note 5. (2) Unless the disability of coverture be tacked to that of infancy, if the said possession was adverse to said Alice Peck, as stated in the last point, then she was barred by the statute of limitations within three years after arriving of age, which would be in 1873, she being about eighteen years of age when she was married in 1867. *Campbell v. Gas Co.*, 84 Mo. 252 ; *Keeton v. Keeton*, 20 Mo. 530 ; *Walker v. Bacon*, 32 Mo. 144. (3) One disability cannot thus be tacked on to another to prevent the statute of limitations from commencing to run. *Campbell v. Laclede Gas Co.*, 84 Mo. 352, 376 ; *Keeton v. Keeton*, 20 Mo. 530. (4) The

husband, John W. Peck, by virtue of the marital right, and he only, was entitled to the possession, and hence to bring this action, from and after his marriage to Alice Soyster, and more than ten years having elapsed between the marriage in 1867, and the bringing of this suit in 1883, this action is barred; and even admitting for argument that the possession was not adverse as to Alice Soyster before her marriage, there can be no question but that it became adverse as to everybody upon the probate of the will of Thomas J. Lockridge, January ——, 1868.  *Campbell v. Gas Light Co.*, 84 Mo. 352; *Miller v. Miller*, 60 Pa. St. 16; *Dyer v. Witler*, 89 Mo. 81; *Mueller v. Kaessman*, 84 Mo. 318; *Gray v. Dryden*, 79 Mo. 106; *Cooper v. Ord*, 60 Mo. 420–430; *Bledsoe v. Simms*, 53 Mo. 305, 308; *Fugate v. Pierce*, 49 Mo. 441–444; *Danner v. Berthold*, 11 Mo. App. 351; *Gilpin v. Brown*, 47 Mo. 105.

*E. B. Gill* for respondents.

(1) The deed from Lockridge to Nelson, made in 1861, during the life of Rachel Lockridge, the dowress, could not affect the title of the remainderman, Alice. *Soloman, adm'r, v. Davis*, 29 Mo. 177; *Keith v. Keith*, 80 Mo. 125. Said transfer of the legal title of Lockridge's interest in said land was not *bona fide*. Nelson conveyed back to Lockridge just such title as he had received from Lockridge, and no more. See also *Roberts v. Morgan*, 30 Vt. 319; *Leach v. Beattie*, 33 Vt. 195; *Holly v. Hawley*, 39 Vt. 531; 3 Wash. R. Prop. (3 Ed.) 128; *Brooks v. Fowle*, 14 N. H. 248; Angell on Limitations, sec. 435. (2) Plaintiffs and defendant are tenants in common of the real estate in controversy, and the statute of limitations did not begin to run against plaintiffs in favor of defendant prior to his taking possession and denial of their right, which occurred in the fall of 1882. Plaintiffs were not barred of their action in 1883, when this suit was brought. 1 Wash on

Real Prop. (3 Ed.) 566 ; *Warfield v. Lindell,* 30 Mo. 272; *Zeller's Lessee v. Eckhart,* 4 How. 296 ; *Stonestreet v. Doyle,* 75 Va. 379 ; Tyler on Ejectment, 876 ; *Budd v. Collins,* 69 Mo. 139 ; 3 Wash. on Real Prop. 128, 141.

RAY, C. J.—This is an action of ejectment, brought by plaintiffs, who are husband and wife, against defendant, to recover the possession of the one-twentieth of one hundred and twenty acres of land, in the northwest quarter of section 15, township 49, range 33, in Jackson county, Missouri. The answer contained, first, a general denial, and then two other separate answers, the last of which is in the nature of the statute of limitations, with adverse possession for the statutory period under claim and color of title.

The facts necessary to present what we deem the controlling questions in the case, are, as we gather from the record, briefly about these : Jones Lockridge, who died intestate in 1836, was the grandfather of defendant and plaintiff Alice ; and the common source of title to each. At his death, he left surviving him, five children, to-wit: John H., Jones H., Amanda B. ( the mother of plaintiff Alice ), Dudley S., and Thomas J. ( the father of defendant ), and his widow Rachel. At his death, said Jones Lockridge was seized in fee-simple of said northwest quarter ( of which the land in suit is part ), and various other tracts of land in said county of Jackson. Subsequently, in 1840, said real estate was partitioned between and among his said children and widow, and the said northwest quarter was set apart to said widow, as her dower. Amanda Lockridge, the mother of plaintiff Alice, was twice married, having by the first marriage three children, Emily, George W., and William W. Talley, and by the second marriage, the plaintiff Alice Soyster, and died shortly after the birth of said Alice. Subsequently, in 1849, after the death of said Amanda, a suit was brought in the circuit court of Jackson county, Missouri, in the names of the children

and heirs at law of said Amanda (the mother of plaintiff Alice) against Rachel Lockridge, their grandmother, and the widow of said Jones Lockridge, praying said court, as a court of equity, to order and decree a sale of the one-fifth interest of said children of said Amanda Lockridge (in the lands now in controversy and which had been assigned to the widow as her dower), which suit is thus entitled: "Joseph C. Ranson and Emily Ranson, his wife, for themselves, and William Wallace Talley and George W. Talley, by their guardian, Joseph C. Ranson, and Alice Soyster, by her next friend, John J. Soyster, plaintiffs, v. Rachel Lockridge, defendant. On petition to sell land."

In 1850, there was judgment in this suit, ascertaining the rights of all parties; and ordering that this one-fifth interest be sold, at private sale, and appointing Joseph C. Ranson as commissioner to make the sale; a sale was accordingly made by said commissioner to Thomas J. Lockridge, the father of the defendant, for $528. This sale was reported to and approved by the court, and a deed, in due form, duly made, acknowledged and recorded, in the proper office, conveying (or purporting to convey) said interest of the parties to said suit to said Thomas J. Lockridge.

It also further appears that the plaintiff Alice was born in March, 1849; her mother, Amanda, as before stated, died shortly after her birth, in the same year; and her father, John J. Soyster, some time in 1851 or 1852, and that she, said Alice, attained her majority in March, 1870. The plaintiffs were married in 1867, and have three children, born of the marriage. This suit was commenced in August, 1883, and the trial had in January, 1885.

It also further appears that Rachel Lockridge, the widow of said Jones Lockridge, after his death, continued to reside on the land in question, so set apart to her as her dower, until her death in 1862. During this time, her son Thomas J. Lockridge resided with her on

the place, and the plaintiff Alice, after the death of her mother, also lived with her grandmother till her death, the most of the time, and then with her said uncle, Thomas J. Lockridge, until her marriage in 1867.

It appears, as before stated, that in 1852, Thomas J. Lockridge, under a judicial sale, of the Jackson circuit court, bought plaintiff Alice's interest in the lands in controversy, at the price and sum of $528, and got the commissioner's deed therefor, conveying, or purporting to convey, the same to him, and placed the same on record in the proper office. Prior thereto, it also appears that said Thomas J. Lockridge had directly and indirectly purchased the one-fifth interest of all the other heirs to the land in controversy, for valuable considerations; got deeds therefor and placed them on record in the proper office. In fact, it was conceded at the trial that the interest of all the other heirs had, by proper deeds or conveyances, passed from them, and directly or indirectly vested in the said Thomas J. Lockridge, prior to his said purchase, at said commissioner's sale, of the said interest of the plaintiff Alice, and that said deeds and conveyances were all on record, in the proper office, in said county.

It also further appears that said Thos. J. Lockridge, at, prior and subsequent to his said purchase of plaintiff Alice's said interest, at said commissioner's sale, resided on the land in controversy with his mother Rachel Lockridge, who held a dower interest therein; and continued so to reside with her, till her death in 1862; claiming all the while, to be the absolute and exclusive owner of the *fee-simple title* to the same, subject only to the dower interest of his said mother Rachel, with whom he lived till her said death, and during all this time, he also paid the taxes on said land, made valuable and lasting improvements thereon, and in various ways, exercised the usual acts of ownership over and pertaining to said fee-simple title thereto.

It also further appears that, some time prior to his mother's death, to-wit, in 1860, she conveyed, by deed, duly acknowledged and recorded, for good and valuable consideration, her said dower interest and estate in said land to said Thos. J. Lockridge. It further appears that, upon his mother's death in 1862, said Thos. J. Lockridge immediately took and held the *actual*, open, notorious, adverse and exclusive possession of said land, under claim and color of fee-simple title thereto ; paying the taxes ; making other and further valuable and lasting improvements thereon, up to his death in 1868 ; and that those claiming under him have so actually occupied, possessed and claimed said land, continuously up to the commencement of this suit ; and still so hold, possess and claim the same, to the exclusion of the plaintiff and everybody else.

This case was tried by the court without a jury. At the trial, the plaintiffs offered the plaintiff Alice as a witness in said cause, to which defendant objected, as incompetent, but the court overruled said objection and permitted said Alice to testify, to which ruling of the court the defendant, at the time, excepted. At the conclusion of the evidence on both sides, the plaintiffs asked no instruction. The defendant, however, asked the four following instructions, to-wit:

" 1. The commissioner's deed from Joseph C. Ranson to Thomas J. Lockridge, read in evidence by defendant, was sufficient and did convey to said Lockridge all the right, title and interest of the plaintiff Alice R. Peck in the lands in controversy, as one of the heirs of her mother, Amanda B. Soyster.

" 2. Upon the marriage of the plaintiffs herein, in November, 1867, the plaintiff John W. Peck, as the husband of plaintiff Alice, became entitled to the possession of all the real estate belonging to his wife in this state, and if Thomas J. Lockridge was holding possession of and claiming the whole of the lands described in

the petition as his own, under the several deeds read in evidence by defendant, adversely to all persons, openly, exclusively and notoriously, then said plaintiff Peck's right of action to the land in controversy accrued at that time ; and if such adverse, open, exclusive and notorious possession and claim of the whole of said premises were continued by said Thos. J. Lockridge until his death in 1868, and by his widow thereafter till her death in 1869, and by the administrator of said Lockridge's estate, R. H. Nelson, from the widow's death until 1882, and that then defendant succeeded to and continued such adverse, open, notorious and exclusive possession and claim from that time to the present, then the finding must be for defendant.

"3. If, upon the death of Rachel Lockridge, the grand-mother of the plaintiff, in 1862, Thomas J. Lockridge, the father of defendant, was holding possession of and claiming the whole of the real estate described in the petition, and known as the ' Lockridge Home Farm,' as his own under the commissioner's deed from Joseph C. Ranson and the other deeds from the heirs of Jones Lockridge, deceased, adversely, openly, exclusively and notoriously, then said plaintiff Alice's right of action accrued at the time of her grand-mother's death, and if such adverse, open, notorious and exclusive possession was continued by said Lockridge until his death in 1868 and by his widow thereafter until her death in 1869, and by R. H. Nelson, administrator of said Lockridge's estate, thereafter till 1882, and that then the defendant succeeded to such possession, and continued the same, claiming under his father as his heir or devisee, then the finding must be for defendant.

"4. If Amanda B. Soyster died in 1849, and her husband, John J. Soyster, died in 1851, and Rachel Lockridge, the grand-mother of plaintiff, died in 1862, then whatever right of action plaintiff, Alice R. Peck, now has, if any, accrued upon the death of her said

grand-mother, and said Alice had three years after arriving at the age of twenty-one in which to bring her action, and if said Alice arrived at twenty-one years of age in the year 1870, and this action was not brought until January, 1883, then she, said Alice, is barred by the statute of limitations from recovering in this suit."

The court gave the third, but refused the first, second and fourth ; to which refusal the defendant excepted. The court thereupon found for the plaintiffs and rendered judgment accordingly. The defendant, after unsuccessful motions for new trial and in arrest, brings the case here by appeal.

From the record it is apparent that this case turns upon the propriety of the foregoing instructions, and the rulings and findings of the court thereunder. We may premise, that, from the view we have taken of the case, it will not be necessary to consider or pass upon the question presented by the first instruction, since the commissioner's deed and the proceedings under which it was made, if conceded to be invalid and insufficient to pass the title and interest of the plaintiff Alice, yet they are good, as color of title, under the statute of limitations, to bar a recovery, provided the actual possession of the property in question thereunder, by the defendant and those under whom he claims, appears by the evidence to have been sufficiently exclusive, adverse, notorious and continuous under claim of title, for the statutory period of ten years, prior to the commencement of this suit.

The legal propositions embodied in the second instruction, as we understand them, are correct, and it was error in the court to refuse it. This instruction, as we understand it, proceeds upon the theory that plaintiff Alice's title to the property was at the date of said marriage a subsisting title, unbarred by adverse possession prior to said marriage. If her title had been extinguished and barred under the statute of limitations prior to her said marriage, then, in that event, she had

no title or right of possession to be transferred by the
marriage to her husband, and he as such husband,
would have no standing in court to institute or main-
tain such action.   But if it had not been so barred, then
the husband, under numerous decisions of this court,
was the only proper and necessary party to maintain
such action during the continuance of his said marital
rights.  *Dyer v. Wittler*, 89 Mo. 81, and numerous
authorities there cited.

The action of the court in giving the third instruc-
tion correctly declared the law applicable to the facts
in evidence, and "its finding" for the plaintiffs there-
under was manifestly against both the law and the
undisputed evidence in the cause, and therefore erro-
neous.

This brings us to a consideration of the fourth
instruction, which may be regarded as presenting the
controlling questions in the case.  As already suggested,
the law in this state and elsewhere, as a general propo-
sition, is well settled that an actual, exclusive, adverse
and notorious possession of real estate under claim and
color of title, continuously held for the period of ten
years, will, under the statute of limitations, confer the
fee-simple title thereto.   The authorities on this ques-
tion are too numerous and unquestioned to require
specification here or a re-statement of the principles upon
which they rest.   When, how far and to what extent
this general doctrine is qualified or modified, where the
party in actual possession is a joint tenant, or jointly
with others seized of the fee to the property, is, we
think, when properly considered, equally well settled
by the abundant authorities touching the question,
among which we may here cite the following:  Wood on
Lim. of Actions [Ed. of 1883] sec. 266, pp. 558, 559, 560,
and authorities cited; 3 Wash. on Real Prop. [Ed. of
1887] chap. 2, sec. 7, and ¶¶ 24, 25, 26, and cas. cit.;

*Campbell v. The Laclede Gas Co.*, 84 Mo. 352, 374, 375, and authorities cited.

The proposition is not questioned that the possession of one of the joint tenants is, in law, the possession of all. Neither is the further proposition questioned, that when one joint tenant purchases an "outstanding" title to the joint estate, it will be *presumed* and held to be for the benefit of all the joint tenants. But that is not this case. Here there was no purchase or attempted purchase of any "outstanding" title hostile to the joint estate, but all the purchases made, or attempted to be made by said Thomas J. Lockridge were of the several interests of his co-tenants themselves. Such purchases thus made, or attempted, manifestly are not, and cannot be *presumed* to be for the common benefit of the joint owners. On the contrary, their sole and only purpose is to extinguish the joint tenancy, and transfer the interest thus bought to the sole benefit of the purchaser. The proposition needs no argument, or the citation of authorities to support it. It is manifestly self-evident.

The learning, in the books, as to the effect and presumption attending the purchase of an *outstanding* title, by one of several co-tenants, manifestly has but little, if any, application to the case at bar. The facts in this case are uncontradicted, that Thomas J. Lockridge, the father of the defendant, purchased the interest of all the other joint tenants to the property in dispute ; and to that extent *extinguished* the joint tenancy ; and that he attempted to purchase, and thought he had purchased, that of the plaintiff Alice also ; and that he received a deed therefor from the commissioner, conveying or purporting to convey her said interest, thus extinguishing, as he thought, the last vestige or remnant of joint tenancy to the property in question ; and that upon the faith thereof, at the death of his mother, Rachel, in 1862, he took the actual, exclusive, adverse, open and notorious possession of the

property under claim and color of title, and continuously so held it, till his death, in 1868, and that said possession was thereafter continued by his administrator, the guardian of defendant, and the defendant himself to the institution, in 1883, and trial of the present suit, in 1885 ; that valuable and lasting improvements were made thereon by said Thomas J. Lockridge, his administrator, the guardian of the defendant, and by the defendant himself ; that, during all that time, the taxes were all paid, and all the usual acts of ownership, during all this time, were exercised over the property by the defendant and those under whom he claims, for a period of about twenty-one years before the bringing of this suit.

Even if it be conceded that the joint tenancy originally existing between plaintiff Alice and said Thomas .J. Lockridge was not in point of law extinguished by the judicial sale and commissioner's deed in question, for want of jurisdiction in the court, still, *as a matter of fact*, Lockridge's actual possession, upon the death of his mother, in 1862, under the undisputed evidence in the cause, was, *in its inception*, obviously, if not necessarily hostile, exclusive and adverse ; and so remained and continued thereafter, by him, and those claiming under him. Concede, further, that it was incumbent that a knowledge of the hostile character of his possession should be brought home to plaintiff Alice, still it does not follow that this can only be done by a personal or formal communication to that effect. Under all the authorities, *it is sufficient* if his claim of title to the whole estate is so *notorious*, that her knowlege of such adverse claims can be *presumed*. Wood on Limitation of Actions, p. 559, sec. 266 ; Washburn on Real. Prop. (Ed. 1887) 153, 155.

When it can be thus *presumed*, numerous authorities treating of this subject use language to this effect : "As a tenant in common, his possession is deemed the possession of his co-tenants, unless it is made manifestly

adverse to them by open and notorious acts, disclosing such a, result. *It is sufficient* if his acts are of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse and an actual, exclusive ownership are intended to be asserted against them." *Campbell v. Laclede Gas. Co.*, 84 Mo. 374, 375; *Warfield v. Lindell*, 38 Mo. 561; *Lapeyre v. Paul*, 47 Mo. 586; *Warfield v. Lindell*, 30 Mo. 272; *Long v. Stapp*, 49 Mo. 506; *Dyer v. Wittler*, 89 Mo. 81, and authorities cited. It follows from the facts in evidence that plaintiff Alice was barred under the statutes of limitations from maintaining this action, long before its commencement in 1883.

We conclude therefore that instruction number four correctly declares the law of this case, and that its refusal, under the evidence in the record, was manifest error, and for that reason the judgment of the trial court is reversed and the cause remanded for further proceedings, in conformity to these views, herein expressed, and it is accordingly so ordered. All concur, except BARCLAY, J., not sitting.