WHITAKER et al., Appellants, v. WHITAKER et al.

### Division Two, June 26, 1900.

1. **Voluntary and Fraudulent Deed:** BY WHOM SET ASIDE? A voluntary deed, or one made in fraud of creditors, may be set aside at the suit of a creditor of the grantor, if timely brought. But such a deed conveying the life estate of the grantor, is, as between the grantor and the remaindermen and their heirs, valid, nor can it be impeached by the grantor's creditor, or a purchaser at his sale, after it has been of record ten years.

2. **Life Estate:** MERGER WITH REMAINDER: WHEN SUIT IS BARRED: OUSTER OF CO-TENANT: NOTICE OF ADVERSE CLAIM. Where a life estate is created by will or deed, and the owner of the life estate conveys it to the remaindermen, there is a merger of the two estates, and the remaindermen's right to possession immediately accrues, and they can not wait until the death of the life tenant to bring suit for possession against one claiming adversely to them, but are barred from bringing such suit after the statutory period after such adverse possession began has run. And if such adverse disseizor is himself one of the remaindermen, adverse possession dates from the time he ousted his co-tenants and began to claim possession and

Whitaker v. Whitaker.

ownership inconsistent with the presumption that his possession was their possession also. To claim adversely to the other co-tenants it is necessary for him to bring notice of his hostile possession home to them, and such notice may be inferred by acts importing that an adverse and exclusive possession was intended to be asserted against them.

3. **Ejectment**: FORMER SUIT: PLEADINGS AS EVIDENCE. Pleadings of a former ejectment suit by the same plaintiffs against the same defendants for the same tract of land, are competent evidence to show that at that time plaintiff asserted exclusive right to the possession of the lands and to bring home notice to defendants of their assertion of an actual ouster. But the judgment in that proceeding is not proper evidence, since one ejectment suit is not a bar to another.

4. ————: SELF-SERVING TESTIMONY OF POSSESSOR. Statements of a deceased co-tenant that he acquired the title of his brothers and sisters in the land, and that they were compensated by his interests in another State, if made in the absence of such deceased co-tenants, are self-serving testimony in behalf of the defendant heirs of such disseizor, are hearsay, and being an attempt by *ex parte* declarations to show that he had acquired the title of his co-tenants, are incompetent.

5. **Title**: DEFENSE OF ADVERSE POSSESSION: PEREMPTORY INSTRUCTION. Where plaintiffs have shown that they have *prima facie* the legal title, and the defense is the statute of limitations, the court can not give a peremptory instruction for defendants, but must submit the issue to the jury, for it is out of the province of the court to assume such adverse possession.

6. **Life Estate**: DEED BY PURCHASER TO SOME CO-TENANTS: PRESUMPTION. A conveyance to two remaindermen by the purchaser of the life estate at execution sale, is presumed to be for the benefit of all the remaindermen or co-tenants. But such deed does not serve to keep alive the life estate if the life tenant had previously conveyed her life estate to all the remaindermen, but merely serves to remove any outstanding cloud upon the reversion.

Appeal from Pike Circuit Court.—*Hon. Reuben F. Roy, Judge.*

REVERSED AND REMANDED.

*J. H. Blair & Son* for appellants.

(1)   The court permitted R. A. Campbell to testify that he understood from Benj. K. Whitaker that there was an arrangement between him and his brothers and sisters, that he was to get the lands in controversy, and they were to be compensated for their interest in the land out of Benj. K. Whitaker's interest in the personal property in the State of Mississippi.   This was reversible error because:   (a)   It was hearsay and not made in the presence of the plaintiffs, or any one under whom they were privies in estate.   (b)   The defense set up in the answer is, title acquired by adverse possession and a denial that plaintiffs had any title to the land. Both of these defenses are legal, and that testimony was not competent in support of a legal title as at best it only tended to show an equitable title in the defendants' father.   Where a defendant in ejectment relies in his answer upon a legal title, he can not at the trial avail himself of an equitable defense.   Kenedy v. Daniels, 20 Mo. 104; LeBau v. Armitage, 47 Mo. 138; Ellis v. Railroad, 51 Mo. 200; Russell v. Whitely, 59 Mo. 196.   (2)   The court erred in admitting in evidence the petition in ejectment in case of Robt. H. Whitaker et al v. Elizabeth A. Watts et al.   Except as to equitable defenses, a judgment in ejectment is not *res judicata.* Callahan v. Davis, 125 Mo. 27; Sampson v. Mitchell, 125 Mo. 217.   (3)   The defendant and her mother by purchase acquired the life estate of Karen H. Whitaker, and plaintiffs' right of entry did not accrue until the year 1890 at the death of the life tenant, since when, time sufficient has not elapsed to ripen the defendants' possession into a title, as against the reversioners.   Fischer v. Siekmann, 125 Mo. 165; Thomas v. Block, 113 Mo. 66; Sutton v. Casselage, 77 Mo. 397; Duhring v. Duhring, 20 Mo. 176.   The attempted conveyance of her life estate by Karen H. Whitaker to her children was ab-

solutely null and void, for the following reasons. (a) The sole consideration was love and affection, it was therefore a voluntary conveyance, and void as to her creditor, Alexander S. Jackson, regardless of her intentions. The law makes such conveyances fraudulent regardless of the motives of the grantor. Garrett v. Wagner, 125 Mo. 450; Snyder v. Free, 114 Mo. 360; Boatsman Savings Bank v. Overall, 90 Mo. 410; Hurley v. Taylor, 78 Mo. 238; Fisher v. Lewis, 69 Mo. 629; Payne v. Stanton, 59 Mo. 158; Patten v. Casey, 57 Mo. 118; Lock v. Murphy, 45 Mo. App. 519; Bank v. Price, 41 Mo. App. 291. (b) Indebtedness at the time of a voluntary conveyance is evidence of fraud. Woodson v. Peal, 19 Mo. 340; Boyle v. Boyle, 6 Mo. App. 594. (c) The statutes in force at the time said conveyance was made provided that every conveyance of land, made with the intent to hinder or defraud creditors of their lawful actions, damages, forfeiture, debts, or demands "shall be from henceforth deemed and taken as against said creditors and purchasers prior and subsequent, to be clearly and utterly void." R. S. 1855, p. 802, sec. 2. (d) A conveyance by an insolvent solely for love and affection is void as to creditors. Gorville v. Johnson, 9 Mo. 597; Snyder v. Free, 114 Mo. 360. (e) By said deed she divested herself of all the property she owned in the State of Missouri. There should have been ample property reserved, subject to legal process, to meet existing indebtedness, outside of the particular property conveyed. Bank v. Guthrey, 127 Mo. 189; Patten v. Gasey, 57 Mo. 118; Grocer Co. v. Walker, 69 Mo. App. 553; Glocier v. Walker, 69 Mo. App. 288. And the burden of proof was on the defendant to show that said grantor retained sufficient means to pay existing creditors. Hoffman v. Nolte, 127 Mo. 120; Snyder v. Free, 114 Mo. 360; Updegraff v. Theaker, 57 Mo. App. 45. (f) A deed made in fraud of creditors is void, and will not bar a recovery in ejectment. Snell v. Harrison, 104 Mo. 158. And it may be shown that a deed was made in fraud of

creditors, in order to defeat it even in an action of ejectment. Chandler v. Bailey, 89 Mo. 641. . (g) The fraudulent deed being thus declared void from the beginning, the sheriff's deed carries the title. Potter v. Adams, 125 Mo. 118. Alexander S. Jackson did not have to sue in equity to set aside said conveyance in order to subject the land to sale under his execution. Slattery v. Jones, 96 Mo. 216; Lionberger v. Baker, 88 Mo. 447; Zall v. Soper, 75 Mo. 460; Ryland v. Callison, 54 Mo. 513; Bobb v. Woodward, 50 Mo. 95; Allen v. Perry, 50 Mo. 90.

*D. A. Ball* and *I. C. Dempsey* for respondents.

(1) We suppose that serious consideration will not be given to appellants' refused instructions relating to allegation that the deed of Karen H. Whitaker to her children made in 1856, was fraudulent as to her creditor, Alexander S. Jackson. Jackson is not complaining. He and the purchaser at execution sale under his judgment elected to let this alleged fraudulent deed stand and it became as valid as any conveyance, at any rate after ten years, the deed having been recorded at the time it was made. Rodgers v. Brown et al., 61 Mo. 187; Bush v. White, 85 Mo. 360; Lewis v. Schwenn, 93 Mo. 31. (2) The pleadings, judgment, etc., in ejectment suit of plaintiffs and other co-claimants brought against Elizabeth Watts in 1874, were competent evidence to show adverse claim on part of defendants if nothing more. Amick v. Brubaker, 101 Mo. 473; Peterson v. Laik, 24 Mo. 541. And appellants had sufficient notice of adverse claim. Peck v. Lockridge, 97 Mo. 561. (3) If the life estate of Karen H. Whitaker was kept alive in tact by the Jackson judgment sale thereunder and purchase by Todd it was merged and absorbed in the greater estate vested in Dr. Whitaker's widow and daughter when Todd conveyed to them, in 1867, then in possession since 1858, claiming an ab-

solute title in fee. Atkinson v. Angert, 46 Mo. 518; Tiedeman on Real Property, p. 39, sec. 63; 2 Blackstone (Sharswood's), book 2; chapt. 11, side page 177, top 175.

GANTT, P. J.—Ejectment for an undivided three-fourths of 315.72 acres of land in Pike county, Missouri. Petition in ordinary form. Ouster was laid as of 1897. The answer was general denial save and except defendant Elizabeth Whitaker admitted that she and her tenants were in possession of the land claiming the exclusive title thereto and that she has held such possession for more than twenty years. In a second paragraph she pleads the ten year statute of limitation. Reply denied the adverse possession of defendant for ten years. Judgment for defendant and plaintiffs appeal.

Benoni Whitaker is the common source of title. Benoni Whitaker died, testate, in Pike county, Missouri, December 18, 1839, owning the lands in suit. The second subdivision of his will is in these words: "Second. My will and desire and I do devise to my beloved wife, Karen Whitaker, all of my real and personal estate to have and to hold during her widowhood. Provided my beloved wife, Karen, should hereafter marry, then it is my wish and I do desire and give her the power of selecting three of her disinterested neighbors to allot to her the one-third of all of my estate both personal and real, which she shall be in possession of at the time of her marriage and the remainder they are to divide equally among all of my children."

He named his wife as his executrix and guardian of his minor children. He left surviving him, Karen H. Whitaker, his widow, and the following named children: Mary F. Whitaker, Benjamin K. Whitaker, Benoni S. Whitaker, Margaret D. Whitaker, William E. Whitaker, Amelia A. Whitaker, Robert H. Whitaker and Malvina Elizabeth Whitaker.

Said testator's widow, Karen H. Whitaker, never mar-

ried again.   She, with her children, moved to the State of Mississippi in the year 1848, and resided there until March 15, 1890, on which date she died.

Of the children, Benoni S. Whitaker died September 11, 1867; William E. Whitaker died November, 1869; Amelia A. Whitaker died August 28, 1862; and Malvina E. Whitaker died June 18, 1854.   None of these children ever married.   They died intestate and without issue or descendants.

Mary F. Whitaker married C. C. Todd.   He died in the year 1856, and she in the year 1860.   They left surviving them the following named children and only heirs at law: William E. Todd, Benjamin L. Todd and John W. Todd, who are co-plaintiffs herein, and each claim an undivided one-twelfth interest in said lands.

Margaret D. Whitaker married E. A. McRaven.   He died June 4, 1884, and she is now single and is a co-plaintiff herein, and claims an undivided one-fourth interest in said land.

Robert H. Whitaker, another co-plaintiff, claims an undivided one-fourth interest in said land.

Benjamin K. Whitaker, married Elizabeth Todd.   He died September 11, 1859.   His widow married Washington Watts.   He died, and his widow Elizabeth Watts, died June 21, 1886.   The defendant, Elizabeth Whitaker, is the daughter and only heir at law of said Benjamin K. Whitaker.

Karen H. Whitaker, after she moved to Mississippi in 1848, held possession of said lands, through her tenants, until March, 1859.   About October, 1858, Benjamin K. Whitaker claimed to Abram Haff, who was then the tenant of Karen H. Whitaker, that he had bought the land, and he purchased of said Haff the unexpired term of that rental year, and immediately took possession of the property and remained in possession until his death in September the following year.

On February 17, 1855, Karen H. Whitaker, by James O. Broadhead as her attorney in fact, by her written contract or title bond, sold said land to Alexander S. Jackson at the agreed price of $8 per acre, the purchase money to be paid June 1, 1855, and when paid she bound herself to make to said Jackson "an indefeasible title in fee simple" to said lands. She then believed that she owned said lands in fee. When the money became due under the terms of said title bond, said Jackson made to Karen H. Whitaker a tender of the purchase money and demanded of her that she make him an indefeasible title in fee simple to said lands. She refused to accept the purchase money, and failed to make him a title thereto in fee. August 16, 1855, said Alexander S. Jackson commenced a suit against her in the Pike Circuit Court on said title bond for the recovery of $4,500 damages for her failure to comply with the condition of said bond.

After the institution of that suit, and on the 17th day of April, 1856, said Karen H. Whitaker, for the consideration of "love and affection," conveyed by quitclaim deed all her interest in said lands to Mary F. Todd, Benjamin R. Whitaker, Margaret D. Whitaker, Benoni S. Whitaker, William E. Whitaker, Mereal A. Whitaker and Robert H. Whitaker, they being all of her children that were then living. By said conveyance she attempted to dispose of all the property she owned in Missouri.

On the same day that Karen H. Whitaker conveyed her interest in said land to her children a suit was instituted in the Pike Circuit Court for the sale of said land in partition, in which said Benoni S. Whitaker is plaintiff and the other children above named and one Abram Haff are defendants. At that time two of the defendants, Mereal A. Whitaker and Robert H. Whitaker were minors. An order of sale was decreed at the September term, 1856. The land was sold by the sheriff April 15, 1857, and deed was

made by the sheriff September 15, 1858, to Benjamin K. Whitaker, Margaret E. Whitaker, Mereal A. Whitaker and Mary F. Todd. The consideration stated in the deed is $4,560. None of the grantees in said deed, unless Benjamin K. Whitaker did, ever claimed or asserted any interest thereunder.

During all the proceedings in said partition suit, the suit of Alexander S. Jackson against Karen H. Whitaker, above mentioned, was still pending. On the 25th day of March, 1857, twenty days prior to the sale of said lands in the partition suit, an attachment issued in said cause, was levied on said lands, and Abram Haff, a tenant in possession thereof, was duly notified by the sheriff of said levy.

May 17, 1858, Alexander S. Jackson obtained judgment against Karen H. Whitaker in said suit for the sum of $120 and costs. The attachment lien remained in force up to the rendition of the judgment and merged therein. Execution was issued February 13, 1860, was levied on the lands in dispute February 14, 1860, and the land was sold by the sheriff March 8, 1860, to Francis C. Todd the father-in-law of Dr. Benjamin Whitaker for the sum of $132.

Francis C. Todd, having purchased the interest of Karen H. Whitaker in said land, under the Jackson judgment, on January 29, 1866, by quitclaim deed conveyed it to the defendant, Elizabeth Whitaker, and her mother, Elizabeth A. Whitaker. They accepted said deed and had it recorded, and continued to retain exclusive possession of the land until the death of Karen H. Whitaker, which event occurred March 15, 1890.

There was much evidence tending to prove that Dr. Whitaker in his lifetime and up to his death held the exclusive possession of the property in dispute claiming the ownership thereof, and since his death his widow and her daughter have continued to so hold it.

In the year 1874, the Whitaker heirs including the parties plaintiff in this suit, instituted suit in ejectment in Pike Circuit Court against said Elizabeth A. Watts, the defendant herein, Elizabeth Whitaker, and one Ballow, a tentant. Defendants alleged absolute ownership of all the land. The case went to a jury and there was a verdict and judgment for the defendants. Plaintiffs took a bill of exceptions and abandoned the case at that point.

Mrs. Watts died in 1886, and since that time the daughter Elizabeth and her tenants have continued the possession.

At the close of all the evidence the court gave the jury a peremptory instruction to find for the defendant and a verdict was accordingly rendered for defendant. All of plaintiffs' instructions were refused, and after an unsuccessful motion for a new trial plaintiffs appealed to this court.

I. The learned counsel have argued various propositions of law, but the several contentions may be grouped under a few heads.

The defense is adverse possession, and there was much evidence to sustain this view unless plaintiffs are right in their contention that the statute of limitation could not begin to run until the death of Mrs. Karen Whitaker, the widow of Benoni Whitaker, the common source of title, on March 15, 1890. As shown by the accompanying statement Mrs. Karen Whitaker on the 7th day of April, 1856, conveyed her estate in these lands to her children, who were also the heirs at law of Benoni Whitaker.

Her life estate by that deed vested in the heirs of Benoni Whitaker, to whom the reversion in fee belonged, and from that time she ceased to have any right of possession and her said life estate no longer intervened to prevent a complete vesting both of title and possession in them unless plaintiffs are right in their assertion that her said deed was null and void because voluntary and fraudulent. Jackson, who brought the suit against Mrs. Whitaker, did not assail that deed as

fraudulent and the purchaser at the execution sale under Jackson's judgment took no steps to avoid it.    That deed being voluntary might have been set aside by a creditor of Mrs. Whitaker, but as between her and the plaintiffs and their ancestors it was valid and certainly after ten years have elapsed since it was put to record no doubt can exist that it is not open to attack by the creditor or purchaser at his sale. [Rogers v. Brown, 61 Mo. 187; Bush v. White, 85 Mo. 339; Lewis v. Schwenn, 93 Mo. 26.]

It must be held that the premise upon which plaintiffs found their argument that plaintiffs' right to possession first accrued upon the death of Mrs. Benoni Whitaker is without foundation.    By her deed to the children of her husband her life estate merged in the fee simple in reversion.    It necessarily follows that this deed was relevant and competent evidence, by which the commencement of the running of the statute of limitations was to be ascertained.    Had Mrs. Karen Whitaker not executed that deed it will be conceded that a life estate intervened between plaintiffs and their right of possession and they would not have been barred because no action had accrued to them, but when that deed was made that life estate became merged in their fee simple reversion without the interposition of any intervening estate and their right to possession then accrued.    [Bissett v. O'Brien, 149 Mo. 381.]    But if any doubt existed that neither Jackson nor Frances C. Todd took any steps to have Mrs. Karen Whitaker's deed to her children avoided because fraudulent, it would be removed by the quitclaim deed of said F. C. Todd to Mrs. Benjamin Whitaker and her daughter the defendant Elizabeth Whitaker.

While a creditor of Mrs. Whitaker might have impeached her deed to her children for fraud within the time allowed by our statute, her children who received that deed and their heirs, the plaintiffs herein, are estopped from attacking it on that ground.

No rule of law is more firmly established than that a transfer of property made in fraud of creditors while void as to them is binding upon the parties thereto, and those in privity with them.    [Van Winkle v. McKee, 7 Mo. 435; 14 Am. and Eng. Ency. of Law (2 Ed.), pp. 273, 276, note, 3, and cases cited; Doggett v. Ins. Co., 19 Mo. 202.]

The court therefore committed no error in refusing the 3d, 4th, 5th, 6th and 7th instructions prayed by plaintiffs, based as each and all of them were, upon the proposition that Mrs. Karen Whitaker's deed to plaintiffs and their ancestors was void because voluntary.

II.    Instruction numbered 2 prayed by plaintiffs was properly refused, because it erroneously fixed the date of Mrs. Karen Whitaker's death, as the time when the statute of limitations began to run.    As already said, Mrs. Whitaker's deed to her children merged her estate in their fee simple reversion and the statute began to run, if at all, when Dr. Benjamin K. Whitaker, the father of defendant, Elizabeth Whitaker, ousted his co-tenants, his brothers and sisters of their possession by taking actual possession of the land in his own right, and by "acts overt and notorious" imparted notice to his co-tenants that their rights in the land were invaded and that he claimed a possession and ownership inconsistent with the presumption that his possession was their possession also; in other words, when he actually ousted plaintiffs and their parents of any possession in the lands.    [Peck v. Lockridge, 97 Mo. 549; Hutson v. Hutson, 139 Mo. 229; Dunlap v. Griffith, 146 Mo. 283.]

III.    The point made that the court erred in admitting in evidence the pleadings in the former ejectment suit by plaintiffs against these same defendants in 1874 on the ground that one ejectment suit is no bar to a second, is not well taken.    The object of this evidence was not to establish a former adjudication.    Its purpose was to show that in 1874

defendants asserted exclusive right to the possession of these lands in an action brought against them by plaintiff and to bring home notice at that early date of their assertion of an actual ouster. For that purpose the evidence was competent, but it was error to admit the judgment in that suit.

IV.   The court erred in permitting Robert A. Campbell, Esq., to testify that he understood Dr. Benjamin K. Whitaker, the father of defendant, to say that he acquired the title of his brothers and sisters in this land, and that they were compensated by his interest in Mississippi but the details of the conversation he-could not remember.   This statement was self-serving.   It was entirely narrative, and made in the absence of the other heirs, and hearsay.   While the tendency of modern decisions is to admit explanations of the possessor of property as to his manner of occupancy, to show whether his possession was adverse or not under the statute of limitations, we think this evidence was clearly incompetent.   It was nothing but an attempt to prove an acquisition of his brothers' and sisters' title by his own *ex parte* declarations.

V.   At the conclusion of all the evidence the court gave a peremptory instruction in favor of defendant.   This was error.

The plaintiffs had shown they were the heirs at law of Benoni Whitaker, and as such entitled to the fee simple in reversion in these lands upon the expiration or extinguishment by merger of the life estate of their mother, Mrs. Karen Whitaker, and this with the admitted title of Benoni Whitaker at the time of his death, established their *prima facie* case.

The defendants relied upon the statute of limitations and the burden was on them to sustain that plea.   That there was much evidence to establish the ouster of plaintiffs, and the adverse possession is conceded, but it was a question of fact, which should have been left to the jury under proper

instructions, and it was out of the province of the court to assume such adverse possession, and it was reversible error to so instruct.

As this judgment must be reversed and the cause remanded, it should be remarked further that the quitclaim deed by F. C. Todd to two of the tenants in common, will be presumed to have been for the benefit of all the tenants in common. [Peck v. Lockridge, 97 Mo. 559]. But it did not have the effect of keeping alive the life estate of Karen Whitaker therein, but its effect was merely to remove an outstanding cloud upon the reversion, which by the deed of Mrs. Karen Whitaker had ripened into a fee simple absolute with right of present possession.

As neither party relied upon the partition deed, we have been unable to see its relevancy to any issue in the case, upon the present state of the record. That deed conveyed the lands to Dr. Benjamin Whitaker, whose fourth plaintiffs are willing to concede; to Mrs. Todd, whose three children claim another fourth; to Mrs. McRaven, one of the plaintiffs, who claims another fourth; and Miss Amelia or Mereal Whitaker, who died in 1862 without having married. The deed was executed in 1858 and by its terms the four grantees therein took as tenants in common, each being entitled to an undivided one-fourth. It is asserted in behalf of plaintiffs, one of whom is a grantee in said deed, and three others are children of a grantee therein, that they never took possession under that deed or claimed any interest under said purchase. No objection was made to its introduction, and no error can be assigned in this court on its admission in the circuit court. Notwithstanding that deed by its terms created a tenancy in common between Dr. Whitaker and his sisters, if he afterwards by open and overt acts took and asserted an exclusive possession of said lands, then his co-tenants were ousted and

were bound to bring their action within ten years from said ouster.

While it was incumbent to bring home notice of such hostile possession to his co-tenants, it is sufficient if his acts were of such a nature as by their own import to impart information and gave notice to the co-tenants that an adverse and an actual exclusive ownership was intended to be asserted against them. [Warfield v. Lindell, 38 Mo. 561; Peck v. Lockridge, 97 Mo. 549; Hutson v. Hutson, 139 Mo. 229; Dunlap v. Griffith, 146 Mo. 283.]

For the errors noted the judgment is reversed and the cause remanded for a new trial. *Sherwood* and *Burgess, JJ.,* concur.